**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IOT INNOVATIONS LLC, | |
|        Plaintiff, | Civil Action No. 1:23-cv-12528 |
|    v. | **JURY TRIAL DEMANDED** |
| SAVANT SYSTEMS, INC., | |
|        Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against Savant Systems, Inc. ("Savant Systems" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Savant Systems' infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are attached hereto as **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, and **Exhibit G**, respectively:

| | U.S. Patent No. | Title |
|---|---|---|
| A. | 7,304,570 (the "'570 patent") | Methods, Systems, And Computer Program Products For Providing Context-Based, Hierarchical Security For A Mobile Device |
| B. | 6,801,933 (the "'933 patent") | System And Method For Proactive Caching Employing Graphical Usage Description |
| C. | 6,920,486 (the "'486 patent") | Method And Apparatus For Enabling Synchronizing Data In Different Devices Having Different Capabilities And Unmatched Data Fields |
| D. | 7,263,102 (the "'102 patent") | Multi-Path Gateway Communications Device |
| E. | RE44,191 (the "'191 patent") | Electric Device, Computer, Program, System And Method Of Setting Up User Applications |
| F. | 7,983,282 (the "'282 patent") | Edge Side Assembler |

|   | U.S. Patent No. | Title |
|---|---|---|
| G. | 7,526,762 (the "'762 patent") | Network With Mobile Terminals As Browsers Having Wireless Access To The Internet And Method For Using Same |

2.      IoT Innovations seeks injunctive relief and monetary damages.

## PARTIES

3.      IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.      Savant Systems is a corporation organized under the laws of the State of Delaware and has its principal place of business located at 45 Perseverance Way, Hyannis, MA 02601-1812.

5.      Savant Systems may be served through its registered agent for service, Cogency Global Inc., located at 45 School Street, STE 202, Boston, MA 02108.

## JURISDICTION AND VENUE

6.      IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

7.      This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.      Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.      Defendant is subject to this Court's specific and general personal jurisdiction under due process because of Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business,

engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this state and in this District.

10.      Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

11.      Defendant maintains a regular and established places of business in this District.

12.      Defendant offers products and services and conducts business in this District as described below.

13.      Defendant ships and causes to be shipped into the District infringing products and materials instructing its customers to perform infringing activities to its employees, exclusive and non-exclusive contractors, agents, and affiliates for installation, operation, and service at locations within this District.

14.      Defendant commits acts of infringement in this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products in an infringing manner.

**THE ACCUSED PRODUCTS**

15.      IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

16.      Based upon public information, Savant Systems owns, operates, advertises, and/or controls the website and domain www.savantsystems.com, through which it advertises, sells, offers to sell, provides and/or educates customers about their products and services. *See* **Exhibit**

**H.**

17.    Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes its home security and control platform and systems, including but not limited those marketed as Savant Home Systems, which include, at least, Savant Systems' Home Manager,[1] Smart Host, Smart Lighting, Smart Fixtures, Smart Keypads, Smart Home Apps (including but not limited to the Savant App and Savant Pro App),[2] Smart Remotes (including but not limited to the Savant Pro Remote and Savant Pro Remote X2), and Savant Systems Server(s), and Savant Systems' encryption technologies and its cellular and Wi-Fi capabilities, and their associated hardware and software and functionalities (the "Accused Products").  *See, e.g.*, **Exhibit H**; **Exhibit I**; **Exhibit J**; **Exhibit L**; **Exhibit Q**;  **Exhibit R**; **Exhibit S**; **Exhibit T**; and **Exhibit U**.

18.    Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products for home security and control.  *See, e.g.*, **Exhibit I**; **Exhibit K**; **Exhibit M**; **Exhibit N**; **Exhibit O**; **Exhibit P**; **Exhibit Q**; **Exhibit R**; **Exhibit S**; **Exhibit T**; **Exhibit U**; and **Exhibit V**.

19.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,304,570**

20.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

---

[1] Savant Systems' Home Manager is available on Defendant's website.  *See Home*, SAVANT, https://home.savant.com/.
[2] Savant Systems' Smart Home Apps are available for download through mobile app providers, including but not limited to the App Store and Google Play Store.  *See Savant Systems Inc.*, APP STORE, https://apps.apple.com/us/app/savant/id1095325838; *Savant Systems Inc.*, GOOGLE PLAY STORE, https://play.google.com/store/apps/details?id=com.savantsystems.controlapp.pro&hl.

21.     The USPTO duly issued U.S. Patent No. 7,304,570 (hereinafter, the "'570 patent") on December 4, 2007, after full and fair examination of Application No. 11/200,611 which was filed on August 10, 2005.  *See* **Exhibit A**.  A Certificate of Correction was issued on November 4, 2008. *See id*, at A-15.

22.     IoT Innovations owns all substantial rights, interest, and title in and to the '570 patent, including the sole and exclusive right to prosecute this action and enforce the '570 patent against infringers and to collect damages for all relevant times.

23.     The claims of the '570 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of context-based, hierarchical security for a mobile device.

24.     The written description of the '570 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

25.     Defendant has directly infringed and continues to directly infringe one or more claims of the '570 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '570 patent.

26.     As an example, Defendant, using the Accused Products performs a method for providing context-based, hierarchical security for a mobile device, the method comprising storing a hierarchy of security actions for at least one of protecting data stored on a mobile device and

preventing unauthorized use of the mobile device, the hierarchy including a plurality of security levels, each security level including at least one context-based security action; performing at least one security action associated with a first security level in response to the existence of a first context associated with the first security level; and performing at least one security action associated with a second security level in response to the existence of a second context associated with the second security level.

27.     Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed and continues to indirectly infringe the '570 patent by inducing others to directly infringe the '570 patent.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '570 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '570 patent, including, for example, claim 1 of the '570 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '570 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '570 patent.  Defendant's inducement is ongoing. *See, e.g.*, **Exhibit I**.

28.     Defendant has also indirectly infringed and continues to indirectly infringe by

contributing to the infringement of the '570 patent. Defendant has contributed to the direct infringement of the '570 patent by its personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '570 patent, including, for example, claim 1 of the '570 patent. The special features constitute a material part of the invention of one or more of the claims of the '570 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See, e.g.*, **Exhibit I**.

29.    Defendant had knowledge of the '570 patent at least as of the date when it was notified of the filing of this action.

30.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

31.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

32.    Defendant's direct infringement of one or more claims of the '570 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

33.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '570 patent.

34.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

35.     IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '570 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,801,933

36.     Plaintiff repeats and re-alleges the foregoing allegations in the Paragraphs above as though fully set forth in their entirety.

37.     The USPTO duly issued U.S. Patent No. 6,801,933 (hereinafter, the "'933 patent") on October 5, 2004, after full and fair examination of Application No. 09/644,054 which was filed on August 23, 2000. *See* **Exhibit B** at B-1.

38.     IoT Innovations owns all substantial rights, interest, and title in and to the '933 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

39.     The claims of the '933 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components and functionalities that improve tools for searching electronic information repositories and retrieving relevant results using queries and results built from natural language.

40.     The written description of the '933 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41.     Defendant has directly infringed one or more claims of the '933 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.

42.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 7 of the '933 patent.

43.     For example, Defendant, using the Accused Products, performs a method, comprising receiving a request for data; producing a current state based on the request; determining a next state based on the current state; caching data based on the current state and the next state; and associating the request with a user of an application having a plurality of states, wherein the user is located in one of the plurality of states.

44.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '933 patent.

45.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 6,920,486

46.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

47.     The United States Patent and Trademark Office ("USPTO") duly issued U.S. Patent No. 6,920,486 (the "'486 patent") on July 19, 2005, after full and fair examination of Application No. 10/153,170, which was filed on May 20, 2002.  *See* **Exhibit C**.

48.     IoT Innovations owns all substantial rights, interest, and title in and to the '486 patent, including the sole and exclusive right to prosecute this action and enforce the '486 patent against infringers and to collect damages for all relevant times.

49.     The claims of the '486 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of synchronizing data stores on different devices having data stores that differ in respect to one or more data components.

50.     The written description of the '486 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

51.     Defendant has directly infringed one or more claims of the '486 patent by using, providing, supplying, or distributing the Accused Products.

52.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '486 patent.

53.     For example, Defendant, using the Accused Products, performs a method by which a first client data store hosted by a first client device is synchronized with respect to a second client data store hosted by a second client device by synchronizing the two client data stores with respect to a server data store hosted by a server device, the server having an established connection with

the client devices, the two client data stores each including various data fields, the method characterized by: forming structure information indicative of the structure of the two client data stores in respect to at least one data field of the first client data store, for which the second client data store does not have either one corresponding data field or does not have two or more data fields that in combination correspond to the at least one data field; detecting by the server or the first client device a use of the at least one data field in the first client data store; and setting a correspondence of the at least one data field in the first client data store in respect to the second client data store, in order for the at least one data field in the first client data store to be used by the second client. *See, e.g.*, **Exhibit N**; **Exhibit O**; **Exhibit P**.

54.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '486 patent by inducing others to directly infringe the '486 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '486 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '486 patent, including, for example, claim 1 of the '486 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '486 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would

infringe the '486 patent.  Defendant's inducement is ongoing.  *See, e.g.*, **Exhibit I**; **Exhibit K**; **Exhibit N**; **Exhibit P**.

55.     Defendant has also indirectly infringed by contributing to the infringement of the '486 patent.  Defendant has contributed to the direct infringement of the '486 patent by their personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '486 patent, including, for example, claim 1 of the '486 patent. The special features constitute a material part of the invention of one or more of the claims of the '486 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.  *See, e.g.*, **Exhibit I**; **Exhibit K**; **Exhibit N**; **Exhibit P**.

56.     Defendant had knowledge of the '486 patent at least as of the date when they were notified of the filing of this action.

57.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

58.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

59.     Defendant's direct infringement of one or more claims of the '486 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

60.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '486 patent.

61.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '486 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,263,102

62.     Plaintiff repeats and re-alleges the allegations the Paragraphs above as though fully set forth in their entirety.

63.     The USPTO duly issued U.S. Patent No. 7,263,102 (hereinafter, the "'102 patent") on August 28, 2007 after full and fair examination of Application No. 10/306,848 which was filed on November 27, 2002.  *See* **Exhibit D**.  A Certificate of Correction was issued on January 1, 2013. *See id.*

64.     IoT Innovations owns all substantial rights, interest, and title in and to the '102 patent, including the sole and exclusive right to prosecute this action and enforce the '102 patent against infringers and to collect damages for all relevant times.

65.     The claims of the '102 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of virtual personalized network setting.

66.     The written description of the '102 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

67.     Defendant has directly infringed one or more claims of the '102 patent by using, providing, supplying, or distributing the Accused Products.

68.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '102 patent.

69.     For example, the Accused Products, used by Defendant, provide a personal digital gateway, comprising: a database of personal digital gateway rule-based profiles for communicating data to a communications device selected from a plurality of communications devices, the rule-based profile categorizing the data as at least one of (1) data associated with an access agent, (2) data associated with a configuration agent, (3) data associated with a security agent, and (4) data associated with a management agent; a processor communicating with a memory device, the processor associating a personal digital gateway rule-based profile with the selected communications device; and a communications interface between the personal digital gateway and, the selected communications device, wherein the personal digital gateway enables communication of the data with each communications device of the plurality of communications devices, the plurality of communications devices comprising at least one of a wireless

communications device, a mobile phone, a wireless phone, a WAP phone, an IP phone, a satellite phone, a computer, a modem, a pager, a digital music device, a digital recording device, a personal digital assistant, an interactive television, a digital signal processor, and a Global Positioning System device, and wherein the memory device is removable from the personal digital gateway. *See, e.g.*, **Exhibit Q**.

70.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed the '102 patent by inducing others to directly infringe the '102 patent. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '102 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '102 patent, including, for example, claim 1 of the '102 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '102 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '102 patent.  Defendant's inducement is ongoing.  *See, e.g.*, **Exhibit Q**; **Exhibit R**.

71.     Defendant has also indirectly infringed by contributing to the infringement of the '102 patent.  Defendant has contributed to the direct infringement of the '102 patent by their personnel, contractors, and customers.   The Accused Products have special features that are specially

designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '102 patent, including, for example, claim 1 of the '102 patent. The special features constitute a material part of the invention of one or more of the claims of the '102 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See, e.g.*, **Exhibit Q**; **Exhibit R**.

72.     Defendant had knowledge of the '102 patent at least as of the date when they were notified of the filing of this action.

73.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

74.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

75.     Defendant's direct infringement of one or more claims of the '102 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

76.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '102 patent.

77.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.

IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '102 patent. Defendant's actions have interfered with and will interfere with FCS's ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

COUNT V: INFRINGEMENT OF U.S. PATENT NO. RE 44,191

78.     Plaintiff repeats and re-alleges the allegations in the Paragraphs below as though fully set forth in their entirety.

79.     The USPTO duly issued U.S. Patent No. RE44,191 (hereinafter, the "'191 patent") on April 30, 2013 after full and fair examination of Application No. 12/788,218 which was filed on May 26, 2010. *See* **Exhibit E** at E-1. The '191 patent is a reissue of U.S. Patent No. 7,379,975. *See id.*

80.     IoT Innovations owns all substantial rights, interest, and title in and to the '191 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

81.     The claims of the '191 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the setting up of applications involving shared application data.

82.     The written description of the '191 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

83.     Defendant has directly infringed one or more claims of the '191 patent by using, providing, supplying, or distributing the Accused Products.

84.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 19 of the '191 patent.

85.     For example, Defendant, using the Accused Products, provides a computer program embodied on a non-transitory computer readable storage medium, for executing a computer process in an electric device, the computer process including steps, the steps including: inputting instructions to execute at least one command from another electric device over a proximity interface, the at least one command being associated with a user application, the user application using application data shared between the electric device and the other electric device, at least a portion of the application data being communicated between the electric device and the other electric device by using a wireless interface; and executing the at least one command on the basis of the instructions, wherein the at least one command is used to replace a series of actions of the user and wherein the at least one command enables interactive operation between the user application of the electric device and a user application of the other electric device. *See, e.g.*, SAVANT, https://www.savant.com/what-is-savant.

86.     Since at least the time of receiving the original complaint in this action, Defendant has also indirectly infringed one or more claims of the '191 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '191 patent by providing or requiring use of the Accused Products.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the

'191 patent, including, for example, claim 19 of the '191 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '191 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '191 patent. Defendant's inducement is ongoing. *See, e.g.*, **Exhibit K**; **Exhibit P**.

87.     Defendant has also indirectly infringed by contributing to the infringement of the '191 patent. Defendant has contributed to the direct infringement of the '191 patent by their personnel, contractors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '191 patent, including, for example, claim 19 of the '191 patent. The special features constitute a material part of the invention of one or more of the claims of the '191 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See, e.g.*, **Exhibit K**; **Exhibit P**.

88.     Defendant had knowledge of the '191 patent at least as of the date when they were notified of the filing of this action.

89.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

90.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid

patent and this objective risk was either known or should have been known by Defendant.

91.    Defendant's direct infringement of one or more claims of the '191 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

92.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '191 patent.

93.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

94.    IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '191 patent.  Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology.  The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology.  The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,983,282

95.    IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

96.    The USPTO duly issued U.S. Patent No. 7,983,282 (hereinafter, the "'282 patent") on July 19, 2011 after full and fair examination of Application No. 12/486,008 which was filed on

June.17, 2009.  *See* **Exhibit F**.  A Certificate of Correction was issued July 16, 2013.  *See id.* at F-19.

97.      IoT Innovations owns all substantial rights, interest, and title in and to the '282 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

98.      The claims of the '282 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities hat improve upon the function, operation, and security of communications devices and networks by personalizing a user experience across devices by using a personal digital gateway to communicate data associated with a common user to a plurality of communication devices.

99.      The written description of the '282 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

100.      Defendant has directly infringed and continues to directly infringe one or more claims of the '282 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '282 patent.

101.      As an example, Defendant, using the Accused Products, performs and/or instructs its customers to perform a method, comprising: (a) identifying data associated with a common user of a personal digital gateway and of a plurality of communications devices; (b) receiving a

selection of a communications device from the plurality of communications devices; (c) retrieving remote data from a selected communications device; and (d) forwarding the remote data to another one of the plurality of communications devices.  *See, e.g.*, **Exhibit K**; **Exhibit M**; **Exhibit P**.

102.     IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '282 patent.

103.     IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,526,762

104.     IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

105.     The USPTO duly issued U.S. Patent No. 7,526,762 (hereinafter, the "'762 patent") on April 28, 2009 after full and fair examination of Application No. 09/659,416 which was filed on September 11, 2000.  *See* **Exhibit G**.

106.     IoT Innovations owns all substantial rights, interest, and title in and to the '762 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

107.     The claims of the '762 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components and functionalities that improve upon the function, operation, distribution, and security of software updates on terminal servers using configuration servers and messaging to

control upgrade delivery.

108.    The written description of the '762 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

109.    Defendant has directly infringed and continues to directly infringe one or more claims of the '762 patent by making, using, selling, offering to sell, providing, supplying, or distributing the Accused Products.  For instance, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 7 of the '762 patent.

110.    As an example, Defendant, using the Accused Products, provides a system comprising: a configuration server unit for receiving a configuration upgrade message from a source of an at least partial software upgrade, for identifying a plurality of users requiring the at least partial software upgrade and for thereafter providing the at least partial software upgrade to respective terminal servers associated with the plurality of users identified to require the at least partial software upgrade for subsequent distribution by the terminal servers to respective terminals of users identified to require the at least partial software upgrade, the configuration server unit being further configured to identify any terminal servers, following the provision of the at least partial software upgrade, to which the at least partial software upgrade has not yet been transferred and to determine, in response to activation of a terminal associated with a terminal server, if the terminal server has been identified as a terminal server to which the at least partial software upgrade has not yet been transferred and, if so, provide the at least partial software upgrade to the terminal server, wherein said configuration server unit comprises a database for saving upgrade information

provided by the source of the at least partial soft-ware upgrade and for associating the saved upgrade information with the source of the at least partial software upgrade.

111.    Since at least the time of receiving the relevant original complaint(s) in this action, Defendant has also indirectly infringed one or more claims of the '762 patent by inducing others to directly infringe said claims.  Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '762 patent by providing or requiring use of the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '762 patent, including, for example, claim 7.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitute induced infringement with the knowledge of the '762 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '762 patent.  Defendant's inducement is ongoing. *See, e.g.*, **Exhibit S**; **Exhibit T**; **Exhibit U**; **Exhibit V**.

112.    Defendant has also indirectly infringed by contributing to the infringement of the '762 patent.  Defendant has contributed to the direct infringement of the '762 patent by their personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '762 patent, including, for example, claim 7.  The special

features constitute a material part of the invention of one or more of the claims of the '762 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See, e.g.*, **Exhibit S**; **Exhibit T**; **Exhibit U**; **Exhibit V**.

113.    Defendant had knowledge of the '762 patent at least as of the date when they were notified of the filing of this action.

114.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of IoT Innovations' patent rights.

115.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

116.    IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '762 patent.

117.    IoT Innovations has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '762 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public

interests, which supports injunctive relief in this case.

## JURY DEMAND

118.    IoT Innovations hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

119.    IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '570 patent, the '102 patent, the'191 patent, and the '762 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.    Judgment that Defendant accounts for and pays to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringements be found willful as to the '570 patent, the '102 patent, the'191 patent, and the '762 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.    That this Court declare this an exceptional case and award IoT Innovations its

reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>October 25, 2023</u>                    Respectfully submitted,

By: <u>*/s/ David S. Godkin*</u>

David S. Godkin (BBO #196530)
James E. Kruzer (BBO #670827)
**BIRNBAUM & GODKIN, LLP**
1 Marina Park Drive, Suite 1410
Boston, Massachusetts 02210
Telephone: (617) 307-6100
Email: godkin@birnbaumgodkin.com
Email: kruzer@birnbaumgodkin.com

<u>Of Counsel</u>
James F. McDonough, III (GA 117088) *
Jonathan R. Miller (GA507179) *
Travis E. Lynch (GA 162373) *
**Rozier Hardt McDonough, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863, -1862
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**Rozier Hardt McDonough, PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**Rozier Hardt McDonough, PLLC**
1500 K Street, 2nd Floor
Washington, DC 20005
Telephone: (404) 779-5305
Email: matt@rhmtrial.com

***Attorneys for Plaintiff IoT INNOVATIONS LLC***

* Admission *pro hac vice* anticipated

**List of Exhibits**

A. U.S. Patent No. 7,304,570
B. U.S. Patent No. 6,801,933
C. U.S. Patent No. 6,920,486
D. U.S. Patent No. 7,263,102
E. U.S. Patent No. RE44,191
F. U.S. Patent No. 7,983,282
G. U.S. Patent No. 7,526,762
H. Savant Website | Home Page
I. Savant Website | Knowledge: Savant Home Manager Reference Guide
J. Savant Website | Case Studies: Classic Farmhouse Meets Smart Home Design
K. Savant | User Guide | Savant Pro App
L. Savant Website | Savant Home Page: Savant Homes
M. Savant Website | Support: How do I add Savant Devices?
N. Savant Website | Support: Network Troubleshooting Guide
O. Savant | Deployment Guide | Savant Pro Remote
P. Savant | User Guide | Savant Pro Remote
Q. Savant | Reference Guide | Savant Smart Host
R. Savant | Deployment Guide | Savant Smart Host
S. Savant | Product Guide | Savant-Ecosystem
T. Savant | Deployment Guide | Remote Pro and Base
U. Savant Website | Knowledge: What is an Over-the-Air (OTA) update?
V. Savant | Savant Essentials Dealer Sales Sheet